FILED

2008 Jan 15 PM 01:06

CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                    )
                                          )    **JUDGE RICHARD L. SPEER**
Lawrence/Robin Stewart                    )
                                          )    Case No. 07-31815
    Debtor(s)                             )
                                          )

## DECISION AND ORDER

    This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Denied.

### FACTS

    On May 4, 2007, the Debtors, Lawrence and Robin Stewart, filed a petition with this Court for relief under Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition, both the Debtors had been employed in their present position for just two months: Mr. Stewart as an electrician for a local nursery; Mrs. Stewart as a cashier for McDonald's Restaurant. The Debtors have one dependent, a 13 year-old daughter.

    In the schedules accompanying their petition, the Debtors (hereinafter referred to collectively as the "Debtors") set forth $54,237.00 in unsecured debt. After accounting for mandatory payroll deductions, the Debtors further reported a combined monthly income of $3,165.49. Against this, the Debtors claimed monthly expenses of $2,841.00, leaving a surplus in their household budget of $324.49 a month. On July 27, 2007, the United States Trustee (hereinafter the "UST"), citing to this surplus, filed its Motion to Dismiss this case for abuse. (Doc. 27).

In re Lawrence/Robin Stewart
Case No. 07-31815

In response to the Motion of the UST, the Debtors amended their schedules so as to reflect an upward adjustment of $159.00 in their necessary, monthly expenses. This adjustment resulted from a previously undisclosed $70.00 per month expense for real estate taxes, as well as other minor modifications made to their budget for food, telephone, and home maintenance. After accounting for these adjustments, the Debtors' monthly surplus in their budget decreased to $165.49

## DISCUSSION

This matter is before the Court on the Motion of the UST to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). These two provisions, which were implemented in 2005 by the Congressional Act known as "BAPCPA,"[1] operate in concert. First, § 707(b)(1) sets forth the blanket rule that a Chapter 7 case may be dismissed where abuse is found to exist, providing, in relevant part:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Prior to the enactment of BAPCPA, the Bankruptcy Code had provided in § 707(b) that a case could only be dismissed for substantial abuse.

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005; Pub.L. No. 109-8, 119 Stat. 23 (2005).

Page 2

In re Lawrence/Robin Stewart
Case No. 07-31815

Section § 707(b)(3) then sets forth two mandatory considerations against which a court is to assess the existence of abuse under § 707(b)(1), providing:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

For purposes of this particular provision, no allegations were made by the UST, either in its Motion or at the Hearing, of 'bad faith' as set forth in subparagraph (A). Accordingly, it will be assumed that, in seeking to have the Debtors' case dismissed under § 707(b)(3), the UST is relying exclusively on subparagraph (B), the totality of the circumstances.

In assessing whether the "totality of the circumstances" require the dismissal of a debtor's case, no specific examples are provided in § 707(b)(3)(B). The only necessary requirement: that any consideration used in a "totality of the circumstances" analysis relate to the debtor's financial situation. This Court, however, has previously recognized that the two grounds for dismissal under § 707(b)(3) are best understood as a codification of pre-BAPCPA case law, and as such, pre-BAPCPA case law is still applicable when determining whether to dismiss a case for abuse. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D.Ohio 2007).

The seminal pre-BAPCPA case in this circuit, the Sixth Circuit, addressing the issue of abuse under § 707(b) is *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989). In *In re Krohn*, the Court set forth that a dismissal under § 707(b) could be predicated upon a debtor's "want of need." In assessing a

Page 3

In re Lawrence/Robin Stewart
Case No. 07-31815

debtor's 'want of need,' the Court in *In re Krohn* elaborated that a primary, and potentially dispositive consideration should center on whether the debtor has the ability to repay his debts out of future earnings. *Id.* Specifically, the Court stated:

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

*Id.* (internal citations omitted). The UST relies exclusively on this ground for dismissal, setting forth in its Motion to Dismiss as follows: "The basis for this motion is that the debtors report excess income [of] $329.49 and therefore have the ability to repay their creditors." (Doc. No. 27, at pg. 1).

A debtor' ability to repay their debts for purposes of § 707(b)(3) is commonly made by looking to whether the debtor could adequately fund a Chapter 13 plan of reorganization. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004); *In re Glenn*, 345 B.R. 831, 836 (Bankr. N.D.Ohio 2006). Funding for a Chapter 13 plan is determined by the amount of 'disposable income' the debtor has available, which is that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004); 11 U.S.C. § 1325. For this purpose, two figures were put before the Court: $324.49, as originally set forth in the Debtors' bankruptcy schedules; and $165.49, based upon the Debtors revising their bankruptcy schedules in response to the Motion of the UST to Dismiss.

As a purely evidentiary matter, the Court is inclined to utilize those income and expense figures originally provided by the Debtors when they first filed their petition. In this regard, while a debtor is permitted to amend their schedules at anytime, self-serving amendments, such as those

**In re Lawrence/Robin Stewart**
**Case No. 07-31815**

here, which are made in direct response to an unfavorable action, are not viewed favorably. Debtors are expected, on their own accord, to correct errors in their schedules; not just when faced with a Motion to Dismiss or other adverse action. Especially problematic in this regard is the following inconsistency:

> The record in this case shows that after filing their amended financial figures, the Debtors filed with the Court a reaffirmation agreement, wherein the Debtors disclosed, as required by § 524(k)(6)(A), their current income and expenses. (Doc. No. 34). However, despite this sequence of events, with the Debtors amending their schedules after they filed their reaffirmation agreement, those budgetary figures provided in their reaffirmation agreement aligned with those income and expense totals as contained in the Debtors' original bankruptcy schedules; not those amended figures which the Debtors now advocate the Court utilize for purposes of the UST's Motion to Dismiss. The Debtors, however, cannot have it both ways: A higher 'disposable income' figure as needed to reaffirm on a secured debt;[2] and a lower 'disposable income' figure when it is expedient to defend against a motion to dismiss under § 707(b).

---

2

Under 11 U.S.C. § 524(k)(6)(A), a debtor is required in a reaffirmation agreement to disclose their monthly income and expenses. Section 524(m)(1) then provides that if the debtor's monthly income less the debtor's monthly expenses is insufficient to service the debt which is sought to be reaffirmed, a presumption arises that the repayment of that debt will constitute an "undue hardship," after which the Court may disapprove the agreement.

Importantly, to avoid any inconsistencies between a debtor's statement of income and expenses in a reaffirmation agreement when compared to the debtor's bankruptcy schedules, Interim Bankruptcy Rule 4008 provides, in relevant part:

> The debtor's statement required under § 524(k) shall be accompanied by a statement of the total income and total expense amounts stated on schedules I & J. If there is a difference between the income and expense amounts state on schedules I and J and the statement required under § 524(k), the accompanying statement shall include an explanation of any difference.

Page 5

In re Lawrence/Robin Stewart
Case No. 07-31815

Notwithstanding, utilizing the $324.49 disposable income figure as advocated by the UST does not necessarily mean that this case must be dismissed for abuse. As a legal matter, the mere existence of a surplus in a debtor's monthly budget will not, as intimated by the UST, automatically warrant the dismissal of a case for abuse under § 707(b)(3). To hold otherwise would paint § 707(b)(3) with too broad a stroke.

To begin with, the overall test, as set forth § 707(b)(3)(B), is not whether a debtor has an 'ability to pay,' but whether, based on the totality of the circumstances, a debtor has a 'need' for bankruptcy relief. The ability of a debtor to pay, therefore, is just one facet of this larger test. In this way, it was set forth in *In re Krohn*: "Other factors relevant to 'need' include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, . . . and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." 886 F.2d at 127.

Also, from a practicable standpoint, it would be unfair to always equate a surplus in one's income with an 'ability to pay' under § 707(b)(3). Take, for example, one debtor who seeks to use the bankruptcy process so as to continue living beyond their means versus another debtor who has done everything in their power to economize their monthly expenditures. Obviously, a 'totality of the circumstances' analysis under § 707(b)(3)(B) should not treat each of these debtors the same. *In re Music*, 310 B.R. 359, 362 (Bankr. N.D.Ohio 2004). Yet, it is entirely feasible that each debtor could exhibit a like surplus in their monthly budget; or more likely, the debtor attempting to live beyond his means would show less, if any, of a surplus in his monthly income. It thus follows that any § 707(b)(3) analysis, based solely on a surplus in income, is incomplete.

Looked at in this light, the Debtors' disposable income figure of $324.49, while hardly nominal, does not strike this Court as excessive. The Debtors have one young child and, in reviewing their monthly budget, the Court could not discern any significant leeway. What particularly stands

Page 6

out in this regard is that the Debtors, in arriving at their original disposable income figure of $324.49, only allocated $300.00 per month toward food. For each individual family member, this amounts to approximately $25.00 per week for food, a very low sum.

The Debtors' budget also does not show any other extravagant spending. To the contrary, as with their monthly allocation for food, all of the Debtors' expenses seem very reasonable. *E.g.*, the Debtors' total automobile payments are only $341.00; they do not have cell phone service, allocating only $45.00 for a land line; and the Debtors spend just $50.00 per month for clothing. The Debtors are also surrendering property so as to lower their monthly expenses – specifically, a rental unit and a 2004 Pick-up truck.

Given these observations, the Debtors, far from resembling those persons who seek to use the bankruptcy process to continue to living beyond their means, strike this Court as persons who have sought to do everything in their power to pay their legal obligations, but now are simply unable to do so. Further reinforcing this observation is the questionable stability of the Debtors' employment. At the time they filed for relief, each of the Debtors had been employed in their current occupation for only two months. Not only does this bring to the fore a factor often mitigating against dismissal under § 707(b)(3), – that the events precipitating the bankruptcy have arisen from events beyond the debtor's control[3] – but the short-term scope of their employment makes the viability of Chapter 13 relief for the Debtors questionable. Pursuant to § 1325(a)(6) a plan must be feasible for it to be confirmed, meaning that "the debtor will be able to make all payments under the plan . . . ."

---

3

*See In re Burge*, 377 B.R. 573 (Bankr. N.D.Ohio 2007) (debtor's medical problem factor mitigating against dismissal).

Page 7

In re Lawrence/Robin Stewart
Case No. 07-31815

In turn, § 109(e) limits eligibility for Chapter 13 relief to only debtors with a "regular income" which is defined by reference to income that is both stable and regular. 11 U.S.C. § 101(30).[4]

Finally, the Court also notes that some other attributes, typically present when abuse is found to exist, are lacking in this case. First, all other things being equal, abuse under § 707(b) is more likely to be found when the debtor has the ability to repay a significant portion of his unsecured debt. *See, e.g., In re Zuccarell,* 373 B.R. 508 (Bankr. N.D.Ohio 2007) (ability to pay 100% of unsecured debts in 36 months warranted dismissal for abuse); *U.S. Trustee for W. Dist. of Virginia v. Harrelson,* 323 B.R. 176 (W.D.Va. 2005) (abuse found where debtors had ability to pay 100% of their unsecured debt in three years). However, in this matter, the Debtors, based upon a disposable income of $324.49 per month, would not be able to make a significant remuneration to their unsecured creditors whose potential claims total $54,237.00. Over five years, this amounts to $19,469.40, a 35% return to the Debtors' unsecured creditors.

In addition, in many cases where abuse is found to exist, the debtor has a high annual salary. *See In re Oot,* 368 B.R. 662, (Bankr. N.D.Ohio 2007) (court considered debtors' relatively high level of income in dismissing case for abuse). However, the Debtors' salary in this matter does not even exceed the state median income. (Doc. No. 1). Also, unlike other § 707(b) actions, the Debtors do not claim any large recreational expenditures; nor do the Debtors secrete funds from their creditors by contributing to a personal retirement account. *In re Pak,* 343 B.R. 239, 246 (Bankr. N.D.Cal. 2006) ($125.00 for recreational activities was excessive for purposes of § 707(b)(3)(B)); *In re Gonzalez,* 378 B.R. 168, 174 (Bankr. N.D.Ohio 2007) (contributions to a retirement account are generally an impermissible deduction from a debtor's disposable income).

---

[4] The term "individual with regular income" means individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker.

Page 8

In re Lawrence/Robin Stewart
Case No. 07-31815

Therefore, for all these reasons, the Court, in weighing the totality of the circumstances pursuant to § 707(b)(3), is not convinced that allowing the Debtors relief under Chapter 7 of the United States Bankruptcy Code would constitute an abuse for purposes of § 707(b)(1). As such, the Debtors' case will not be dismissed as sought by the Motion of the UST. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3), be, and is hereby, DENIED.

Dated: January 15, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 15th day of January, 2008 to:

Beneficial Ohio Inc
961 Weigel Dr
Elmhurst, IL 60126

United States Trustee
Howard M. Metzenbaum U. S. Courthouse
201 Superior Avenue, East
Suite 441
Cleveland, OH 44114

John N Graham
5151 Monroe St
#245
Toledo, OH 43623

Curtis J Koch
PO Box 640
49 Benedict Ave #C
Norwalk, OH 44857

Laurence Scott Stewart
294 US RT 224 W.
Greenwich, OH 44837

Robin Lee Stewart
294 US RT 224 W.
Greenwich, OH 44837

Steven H. Patterson
120 E. 4th St.
8th Floor
Cincinnati, OH 45202

Dean Wyman ust03
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 44114

Cleveland, Oh 44114-1240

Gregory Stout
801 W. Jefferson
Louisville, KY 40202

Scott D. Fink
Weltman, Weinberg & Reis Co., L.P.A.
323 W. Lakeside Avenue
Suite 200
Cleveland, OH 44113

Howard B Hershman
608 Madison Ave
#930
Toledo, OH 43604-1129

                                                      /s/Dawn Serna-Gensch
                                     Deputy Clerk, U.S. Bankruptcy Court